15 minutes. Good morning. Good morning, Your Honors. Jeff Michalowski for the County of San Diego. I'd like to reserve three minutes. We see how that goes. But anyway, this may go more orderly. Okay, well, this this case involves, I think, an important issue, but it's actually a very specific issue. We're not here to talk about disclosures of police investigation materials generally, or talk about sheriff's departments having, you know, any heightened protections for their internal materials. We're here to talk about a very narrow category of documents, the curb reports, critical incident review board reports, which the county contends are privileged in work product, and as well confidential. And I want to begin by being very specific about what these reports are not. Well, let me ask you this, just as a starting point, California Senate Bill 519 went into effect in July, making critical incident reports like the ones that issue here subject to public inspection. Does SB 519 change the stakes of this appeal at all? Potentially in only a very modest way, because SB 519 applies to records that are maintained by a local detention facility. Here, the records are maintained by the chief legal counsel. It refers to records relating to investigations. Curb reports are not investigatory. They're communications with counsel for the purpose of mitigating risk. What do you call them, CIRB or curb? What do you call them? Critical incident review board. You're saying CIRB. What's that? How do you call that? The acronym? Yeah. CIRB. CIRB. C-I-R-B. Okay. So — Wait. You're asserting that the CIRBs are not investigations? If I — I mean, let's just quote — let's just go through them. My goodness. These are investigatory? Investigatory — They're asking, like, you know, did he, you know, report as diabetic or not? I mean, let's just go through. How can you say these are not investigatory after some — an inmate has died in custody? The investigation into the underlying facts are conducted separately and prior to the CIRB meetings. The findings from those are presented to the CIRB board for consideration and discussion. Yes, there's follow-up questions asked by the CIRB participants and by — So then the CIRB purpose, then, is only looking at institutionally what happened and how can we remedy this, make any changes that would prevent that type of inmate death from occurring? I'm not prepared to say that that's the only piece of this. There are multiple purposes for the CIRB reports. Yes, we're looking at the facts. Yes, we're looking at policy and training. But the overarching purpose, the entire reason we're there, is to be thinking about risk mitigation and have that conversation. Well, let me ask you this. Do you have to do CIRB reports? Is that required anywhere? No. Okay. So if a court were to say that — or now that it says that they're now public CIRB reports, is the county's response going to be, we're not doing this anymore? Let me back up a step because I think I've made a slight misstatement. Are they required? They're not required by law. Okay. Are they required by policy? Yes, they are required by Sheriff's Department policy. All right. But you could change that. You can change that policy if now the law — if SB 519 says, okay, we're going to be able to look at them, you can say, okay, we're going to do this differently now because we're not going to turn this over. But I have a question. So at the time that you're doing these, this prior to SB 519, it's my understanding that everyone thought they were confidential. Is that right? Correct. Okay. In terms of — all right. And they only happen when there's a critical incident, meaning something bad has basically happened, right? You don't do them on every case. Correct. Only when an exceptionally high risk of litigation is present due to the incident being critical. Okay. So what confidentiality — now, my understanding in this, admittedly, if officers, let's say they kill someone or someone dies in their custody, they could be subject to, what do you call it, an internal affairs investigation, which is separate from this, right? It would be a homicide investigation in the case of death, and it's separate. Okay. So, I mean, technically, an officer can be charged with homicide after someone dies in their custody or they shoot someone that they shouldn't have shot or any number of things. But my understanding is officers, as part of their jobs, if something happens and people want to talk to them, they have to talk or they get fired, right? Officers don't have a choice of whether they talk to — internally. Is that correct? It sounds correct, Your Honor. It wasn't briefed, so I can't verify that. Well, it's just — the way I'm trying to understand that is I think when officers, when they're questioned by people in their department about what happened, I think that whether some peace officer's Bill of Rights or something, well, I think they have to talk or they get fired. And if they do talk, isn't there something that it can't be used against them in a criminal prosecution? Or I'm just trying to figure out — everyone going into this thought what they were saying was confidential. Now, after this order, it clearly isn't. And could any information in there be used against officers to prosecute them or anything along those lines? How does that work? Again, Your Honor, that wasn't briefed. I think it's a legitimate concern. Well, it just seems to me if you promise people confidentiality and they come in and you only do these after something bad has happened and everyone thinks you're trying to figure — you might be making recommendations about different training. You might be, you know, you might be doing certain things. But mainly, you've identified this as something you could be sued for. And if your officers are doing something they shouldn't be doing, you don't want them to continue doing it. But on the other hand, it's — there's a legal analysis that's overseeing all of this and how you respond. So — and you've promised people confidentiality. But now this order changes that, right? You've promised people confidentiality, and that promise was reasonable. It was reasonable for them to believe that because there were two judicial decisions by district court judges saying that they were privileged and confidential. Backing up one step as to the consequences of 519, even if 519 converts these into non-confidential documents, it doesn't negate privilege. So we'd still have to do the privilege analysis. That would override 519 because 519, all it says is these types of reports can be pursued via the California Public Records Act. The California Public Records Act doesn't require production of documents that are privileged. So that takes us back to our first argument regarding the privileged nature of these documents. But someone just helping you avoid liability is not necessarily giving you attorney-client privilege information, right? I mean, isn't that what an in-ray grand jury said? Look, tax accountants who are preparing your tax documents — and I mean, obviously, they want to help you do it legally, so there's no liability, criminally, civilly, correct? But that's not privileged, and you can't insert a lawyer in that process to immunize it from the privilege. So how is just someone helping you avoid liability turning that communication into an attorney-client privilege one? Well, the issue here, I don't think, is just trying to avoid liability. It's having an environment in which people can communicate their concerns, have them vetted by counsel, and counsel can identify an issue spot, any legal concerns, and then make recommendations for remediation. I think if we look through those — Right. So it seems like when you said the individual death investigation is done separately, that seems like that would be the prime discovery in any Section 1983 case that would subsequently try to bring a wrongful death action, right? It would be that deep interviews with everyone involved about what happened that caused that inmate death. This process seems like a more remedial — we are an agency, we want to identify what happened, and we want to make any changes that we should to our procedures, to our training. However, it seems like this one is trying to do good government, right? And so why wouldn't transparency in that process — I understand your point that people may feel a little bit less free, to be frank. But on the other hand, you have another compelling concern, is that transparency also promotes and facilitates good government, and accountability. Yes, Your Honor. So the purpose of these curb meetings isn't just good government. It's not just improving practices. It's doing so in a legally compliant way. Well, you know, when you talked about what — when curb is done, it seems different than what you have in your actual — I'm looking at the Chief Counsel's Critical Incident Review Board Creation and Refinement document, ER-366 is what I'm looking at, and it says, how should incidents be selected for review? It says, the most commonly included items are in-custody deaths, other than by natural causes, uses of deadly force by department employees, and pursuits resulting in injury requiring hospital admittance or major property damage. So I didn't see anything — you said, oh, no, this is only done for exceptionally high risk of litigation. That's actually not how it's phrased in this document. If you look at the policy, the San Diego County Sheriff's Department policy, the procedures section, which is 2ER-264, that outlines the circumstances that will trigger a curb process. That's in-custody deaths. That's high pursuit chases, which do, in fact, lead to a lot of litigation. The items that are included in that list are there because of the risk of litigation. Yeah, so, when you're finished with this, I have a question for you, but please complete your answer to Judge Koh first. The reason that these events are included in the list of triggering events for curb process is because they present a heightened risk of litigation. And the best evidence we have of that is this case involves 11 curb processes, and those took place before litigation was even threatened, I believe, except one case. We did have a demand letter at that point. But of those 11 where a curb process was triggered, 8 of those actually, in fact, led to litigation. So we have a really good track record of understanding which events are likely to lead to litigation, and then convening all the relevant stakeholders to talk about the issue and to avoid risk. My question is whether our decision has to be or ought to be curb-wide. And by that I mean the following. Each meeting or each incident that leads to this process is different, and the process itself is different. And I suppose, at least theoretically, it's possible that in some instances, the lawyer says nothing and offers no opinions and really is just a fly on the wall on something that doesn't turn out to be legal. And in other instances, the lawyer might be the main event. You know, we have this demand letter, and here's how I want to respond and, you know, the typical lawyer-client meeting. So is this something that has to be decided item by item, or can it be and should it be decided generically? Your Honor, I think it should be decided in an omnibus fashion because the unifying purpose of these curb processes is always the same. It's to convene the relevant stakeholders to exchange candid feedback from the folks on the ground and legal counsel. And let me answer this with an illustration. So if a client calls an attorney and says, you know, I've got this issue, here are all the facts, what do you think? And the attorney says, I think you should do X, Y, and Z for legal reasons, that's very clearly legal advice. If the attorney says, I've considered that and I have no concerns, that's also an attorney-client communication. Variant number three, if the attorney hears that information and says, I'm going to have to think about that, I'm going to get back to you, that's an attorney-client. What if the attorney says this isn't a legal question at all, it's a policy question for management entirely? That's, so that's an interesting hypothetical. If you're looking at it from the perspective of the attorney, then that sounds like it's not an attorney-client communication, but attorney-client communications are, of course, communications between an attorney and a client. And we also need to consider the perspective of the client. The client sometimes doesn't know if something is legal or not, believes in good faith that it may be, and that's why they go to the attorney. And we want to afford, we want to encourage that, right? If we think that a deputy, if a deputy has a concern that they might be confronting a legal issue and they're not sure, we want to err on the caution and encourage them to go to their counsel on that. Okay. Any further questions? No, thank you. All right. We've used a lot of your time, so I'll give you two minutes for rebuttal. Okay, thank you. Morning, Your Honors. Good morning. May it please the Court, I'm James Davis, appearing on behalf of Interveners, the San Diego Voice of San Diego and Prison Legal News. Counsel, before you even get started, I'd like to present you with a hypothetical that, for our purposes, it's hypothetical, but it's something that, as when I was practicing law, I was a management side labor lawyer, and it's based on real events. Let's say a company has a policy that any time there's an injury in the factory, they convene a meeting with all the appropriate managers and the lawyer, and the lawyer comes out to the plant, and part of the purpose of this is to figure out, should we make an offer to this person who's been injured, what's our legal liability, and by the way, how do we prevent this from happening? Should we change the machinery? Should we do different procedures, and so on and so forth? Is that entire event protected by the attorney-client privilege, even though part of the discussion is forward-looking and designed to avert future liability through non-legal recommendations? I would say, if providing legal advice in those communications is the primary purpose of those communications, then yes, it would be privileged. And why isn't that the case here? I mean, if the auditor said, for example, that the ultimate goal is to avoid potential liability in the future, that's the purpose, and it's certainly listed as one of the purposes. If we have to pick only one, why isn't that the one? Well, that's what the policy states. The policy of CURB does say that its goal is to assess potential liability, but the question before this Court is, what is being communicated in these documents? Legal advice is the primary purpose of these communications to solicit or provide legal advice. Now, the District Court conducted an in-camera review of these CURB reports, and it found that legal advice is not the primary purpose. It found that legal advice was a tertiary goal of these communications. It found that legal advice was an incidental goal of these communications. All right. Well, I guess I have a hard time seeing why that would be a factual determination, just because if you look at the whole thing, and if there are magic words or whatever, but everyone's told that it would be confidential, the Department policy requires the reports, but the policy was made because of the high likelihood of events to generate lawsuits. I just have a hard time seeing how we can parse this in the way that you want to and why anyone would ever—if I were the lawyer after this, I would never—I'd say, well, let's just get rid of this CURB, because now you're going to have—we're going to have to create something separate, and I'm going to have to say at the beginning of this, this is legal advice and the whole thing. But I don't think—I don't think the police departments started this out of the goodness of their hearts or whatever. They're worried about lawsuits. They're worried about—and that's exactly why, you know, when people die in your custody or you shoot and kill someone, they have an unusual job, and there's going to be a lawsuit. Well, I would say— You kill people at work. That's what officers end up doing, and sometimes it's found out—it's found to be legitimate. Sometimes there are cases where officers get charged with homicide out of it, and there's certainly a lot of 1983 things that come out of it. I—you know, I have a hard time—you can tell me this is not a dog, but it sure looks like a dog here. I don't believe that the overarching goal of these communications, of these meetings, of these documents was to assess potential liability. The district court made a factual finding, which is reviewed for clear error, that the primary purpose of these documents is to determine training issues and recommend remedial measures. That was stated at the hearing on the county's motion for summary judgment. It's 1 ER 71. So I think we're starting at an incorrect premise that the goal of these documents, the goal of these communications, was to assess civil liability. And I would also like to mention— But can I—but I guess the thing we're struggling with is, when is advice to your client about how to improve their policies and procedures, is that ever legal advice? Well, I think what the county is trying to do in these curb meetings is determine whether a county employee violated a county policy. It's an administrative— But you don't have a curb unless something bad has happened, right? It's not—this isn't just like I'm the police chief, and I say, let's just have a meeting and talk about how we can do better. The curb happens when something bad has happened, right? Correct. That's what—that's the—that's what instigates it. Correct. I mean, how do you tell an officer when they have to come in about they've killed someone and whether that—that that's, you know, that they don't—and the lawyer's sitting in there that it's not legal, and they're told it's being confidential? How can you convert that into, let's just decide how we could have trained you better, officer, before you killed someone? Here's the thing about this case, is that the county had numerous opportunities to present the district court with specific, narrow, tailored redactions of legal advice being solicited or provided, and it decided not to do so because it believed the entirety of the curb documents were privileged, including— That goes back to Judge Koh's question, and back to my hypothetical. If it—you know, when I had those meetings with clients, and I would say things like, well, what if—what if you had a supplemental training session in the such-and-such department? Because it seems like there's this injury, but, you know, last year you had another injury in the same department. So what if you had more training on that machinery? Or what if you had, you know, thought about more breaks during the day so people don't get tired? That's not strictly legal advice, but I would have been horrified if that entire meeting had not been protected by the attorney-client privilege, because the genesis of it is potential liability right now, and how do we avoid legal liability in the future? And it seems to me that both of those are covered by the attorney-client privilege. Why is that wrong? If the primary purpose of that meeting in your hypothetical is to provide legal advice, then it is privileged. But that is not the case with CURB here. And I want to note that— Well, would a training issue trigger a CURB? Excuse me? Just like we want to do better training, does that trigger a CURB? No, it doesn't. Someone getting shot, someone getting injured, those are the things that trigger a CURB. So right there, you're starting with we have a legal problem. That triggers the CURB. Is the lawyer there the whole time? The lawyer, the attorney, Mr. Fagan, with respect to these documents, was present. That's correct. The whole time? I believe so. Because they have phases, I guess, what they do. And he's at every single phase. I believe so. And are the people promised confidentiality before they go into it? I don't believe so, because we— Do you think the officers had any—they think it's going to be given to the Tribune? Not necessarily. But I would mention that there are two points to that. One, there was a district court opinion, I believe in 2014, holding—and this is before Nunez and Bush, which held that CURB reports were discoverable. And then you had Nunez and Bush, which held that they weren't. And then you had a string of subsequent district court opinions holding that they are not privileged, they're not work product, and they're discoverable. But also, the plaintiff, the original plaintiff, Mr. Frankie Greer, submitted a declaration authored by David Myers, who was the Sheriff County captain and Sheriff County commander in the Sheriff's Department for eight years. And he said he was never told that these materials would need to be kept confidential. He kept them in unlocked storage boxes, left them on desks where janitors could see them. He moved into a superior's office, whom he replaced, and found them sitting in unlocked drawers. So I don't think it's correct to start at the— Did Mr. Greer think that he could give them to you? Excuse me? Would Mr. Greer think that those, if you showed up and said, I would like all your CURB reports, would he think that, that he could give you all the CURB reports? I don't know the answer to that question. Okay. But I want to go back to what the district court did in this case. Privilege was litigated on so many occasions. And ultimately, the district court conducted an in-camera review of these documents, looked at all of them, 344 pages. It found, factually, that among all, the entire body of these documents, there were small snippets of legal advice. And the test before the district court was, what is the primary purpose, not of CURB, of the body CURB, but of these communications? So, do we have to defer to the district court's conclusion that the primary legal process was, the primary reason was not legal? Do we have to defer to that? Is that what you're saying? I think that needs to be clear air for the district court's determination to be overturned. I believe that is a factual finding. The court, the district court looked through these documents. What is being communicated here? Is it legal advice? Is legal advice being solicited? No. These are efforts to identify, did an employee violate a company policy? And what follow-up actions do we need to take to remediate that issue? What do you think the consequences for litigation if someone has violated company policy? It seems to me that that is part of the legal analysis as well. You know, if, to go back to my example, if the injury resulted from a supervisor telling someone to do something that was forbidden by policy, that, you know, really increases the legal liability for that event. So I really have a hard time saying that they are segregable in that way. But wouldn't federal rule of evidence 407, which makes subsequent remedial measures inadmissible, deal with this? You cannot bring in this evidence to prove negligence, culpable conduct, design defect, manufacturing defect. Rule 407 says that if a defendant tries to make remedial measures to improve their processes, that's not admissible. So wouldn't that take care of this issue? Yes, that's a good point. The question to me isn't whether it's admissible. The question is whether the discussion is legal advice or part of legal advice. And, you know, maybe the lawyer would say, you know, fix this. You have a lot of liability here because you didn't follow policy. And, you know, if you fix it, you won't be liable later because of the federal rules, which is also legal advice. So I guess my point isn't really whether it's admissible. It's whether the discussion of following policy or failing to follow policy is wrapped up in the search for determination about liability. But NRA grand jury said that the test is the significant purpose test, and the Supreme Court dismissed a cert petition on that. So if it is a — if legal advice is a purpose, that can still coexist with these other purposes being the significant or primary purpose, which means we would still not find clear error here. That's correct. That's correct. But I would like to discuss the hypothetical you're raising about a hypothetical situation where you have discussions about a policy violation and the legal implications of such a policy violation. That's not what happened here. There were no legal discussions about implications of legal liability for these things. So I really think that the courts — the court made a very careful factual finding on numerous occasions because this issue of privilege was litigated time and time and time again. And it found, based on the myriad other non-legal goals of CURB, public statements by former Sheriff Gore, Mr. Fagan himself, that CURB is a body dedicated to promoting transparency, building trust within the community, self-improvement. And then in the CURB documents, the CURB documents themselves, it scoured these documents to find legal advice, and it found small snippets, small snippets that were insufficient to override its factual determination that legal advice was not the primary purpose of these communications. All right. Any additional questions? No, thank you. Okay. Thank you for your argument. All right. Two minutes for rebuttal. Three brief points, Your Honors. There was a question as to whether this Court needs to defer to the district court's finding that legal advice was not the primary purpose of the CURB process. The Court does not need to defer. It can review that de novo because it was based on an analytical error, which was falsely equating. I guess it's rather falsely severing discussions of policy, training, and remediation and saying that those per se cannot be legal. It looked at the subject matter rather than the purpose. The privilege analysis turns on purpose, so that was a legal error by the district court. If this court disagrees and finds that it's a clear error test, the county should still win because we have three declarations saying that the overarching primary purpose of this is legal. We have the policy that says it's legal. And when you review those, as I'm sure you already have, the CURB reports themselves. Yeah, let's talk about it. Look at the background summary. It says the decedent has been in sheriff's custody since this date for these charges. During a security check, they were found dead. Jail medical staff responded. How is that privileged? This just very factual, what time they came into custody, what their charges were, the time of death. If you look through a lot of these documents, that's what they talk about. And if I've looked at every single legal advisor Fagan statement, and I just don't see, he's asking about how do we change the policy, I just don't see legal advice in all of these statements, or any end of these statements from what I see. These look like remedial measures, trying to change policy. They don't talk about really specific cases. It's more about how does that process work. You know, when someone comes back from jail, do they, you know, get special attention? It's all process. It's agency process. I think you have to look at the nature of that attorney-client relationship on a practical level, which is that if an attorney in a meeting with law enforcement commanders citing cases and statutes and using legalese, that's not the most effective form of lawyering. What the attorney in that room needs to do is be responsive to the actual operational concerns and overlay his understanding of the legal landscape over those realities. So inmate time of death, criminal charges for which the inmate is incarcerated, that's all privileged. How can that be privileged? You're right. That's public record, right, what this person was charged with. How is that privileged? Because you're saying as an entire per se curb, everything is privileged. And that's what's in here. There's a lot of public record information in here. And that information would be discoverable through other means. The facts that it's in the curb reports doesn't convert the facts into privilege information. Those facts can't be concealed. But the overall communication is still privileged, even the factual portions of it. So same deal if a client sends an email to an attorney and says, here's the factual write-up. Let me give you the full narrative of what happened. What do you think? And attaches documents. That entire communication is privileged, even though it does contain facts that could be discovered through other means. So you're saying the county never redacts and discloses publicly available public record information in even a privileged document? That seems highly unusual. I can only speak to the curb records, Your Honor. And that's the process with respect to the curb records. It's a very sensitive process. The county contends that the entirety of those communications is privileged, so redaction wouldn't solve the problem. Why not? I mean, I guess I'm really shocked to hear that the county would not disclose publicly available public record information. That information, it won't to the extent that you can get it elsewhere. Therefore, I don't have to unredact public record information. I don't know if ---- Well, I guess what I'm seeing your argument to be is that's all part of how the legal advice was determined. However, if you had a request for a public document that you could send separate and apart from curb, but you don't want to release anything in the curb report that was part of the legal advice, is that what you're saying? That's exactly what I'm saying, Your Honor. And I think that's quite typical that an entire attorney-client communication will be withheld without redactions rather than ---- because every attorney-client communication is going to have some piece of information that is not strictly privileged, time stamp on an email, small talk at the beginning of the email. Well, I guess if you take it further, if you disclose that it was in the report, then later what you're faced with is that you had knowledge of that. Essentially, it's your own, you know, if that the employer had knowledge of something when they were seeking legal advice. At a minimum, doesn't the county make privilege logs? Privilege logs would provide the date of any meeting, who was present, and you create those privilege logs, and you're saying even privilege log information would not be unredacted. That's what I'm hearing from you. That's correct. To the extent that it's in the communication, it won't be redacted. That information can be supplied through the privilege logs, the date, the time, that sort of information. That's in the record. Because it's privileged, in your view. The facts aren't privileged. The communication is. To the extent that the fact is contained within a privileged communication, the privilege carries to it, although it can be discovered through other means. Okay. Thank you both for your argument. The Court's going to take a 10-minute recess, and then we'll hear the last case on calendar. Thank you. Thank you, Your Honors. All rise.
judges: GRABER, CALLAHAN, KOH